FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

AUG 15 2011

Stephan Harris, Clerk
Cheyenne

Patrick J. Crank
Robert A. Nicholas
NICHOLAS & CRANK, P.C.
2515 Warren Avenue, Suite 505
P. O. Box 1709
Cheyenne, WY 82003-1709
(307) 634-2994
Fax: (307) 635-7155

ATTORNEYS FOR PLAINTIFFS

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| Robert L. Kroenlein Trust By and Through Deborah Alden, Successor Trustee, and Chugwater Brewing Company, Inc., a Wyoming Corporation<br><br>Plaintiffs,<br><br>v.<br><br>Gary Bruce Kirchhefer, Commodore Bar, Inc., Rick L. Bowen, Silver Dollar Bar of Lusk, LLC, and Larry R. Halligan<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil No. **11CV284** |

## COMPLAINT

Plaintiffs Robert L. Kroenlein Trust by and through Deborah Alden, Successor Trustee, and Chugwater Brewing Company, Inc., A Wyoming Corporation, through their attorneys, Nicholas and Crank, P.C., complain of

Defendants Gary Bruce Kirchhefer, Commodore Bar, Inc., Rick L. Bowen, Silver Dollar Bar of Lusk, LLC, and Larry R. Halligan as follows:

## PARTIES, JURISDICTION AND VENUE

1.     J&B Package Liquor, located at 120 East Valley Road, Torrington, Wyoming, was owned an operated as an asset of the Robert L. Kroenlein Trust ("Kroenlein Trust") during calendar years 2004 through January 1, 2006, when the trust assets were distributed to Deborah and Eric Alden. The Business is a package liquor store in Torrington, Wyoming which was operated by the Trustees of the Kroenlein Trust, Robert Kroenlein and Betty Kroenlein, prior to their deaths in November, 2004. Following the death of Robert Kroenlein and Betty Kroenlein in November, 2004, Deborah Alden was the Successor Trustee to the Kroenlein Trust.

2.     Chugwater Brewing Company, Inc., ("Chugwater") is a registered Wyoming Corporation, owned by Deborah L. Alden and Eric M. Alden which has operated J&B Package Liquor Store in Torrington, Wyoming, since approximately January 1, 2006, upon distribution of the assets of the Kroenlein Trust to Deborah L. Alden and Eric M. Alden.

3.     Commodore Bar, Inc. ("Commodore Bar") was a registered Wyoming Corporation, owned by Rick L. Bowen, which operated the

2

Commodore Bar in Wheatland, Wyoming. The Commodore Bar, Inc. has been listed as "inactive" with the Wyoming Secretary of State since June 4, 2007.

4.      Silver Dollar Bar of Lusk, LLC, (Silver Dollar Bar") is a registered Wyoming Limited Liability Company, owned by Larry R. Halligan and Bess M. Halligan, which operated the Silver Dollar Bar in Lusk, Wyoming.

5.      Rick L. Bowen ("Bowen") is a resident of Platte County, Wyoming.

6.      Larry R. Halligan ("Halligan") is a resident of Niobrara County, Wyoming.

7.      Gary Bruce Kirchhefer ("Kirchhefer") is a resident of Goshen County, Wyoming, and was an employee of The Foursome, Inc. dba Orrison Distributing, Ltd. during all times alleged herein.

8.      The amount in controversy in this matter exceeds $75,000.00, and this Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1343, and 18 USC § 1961, 1962, § 1964.

9.      Kirchhefer is a Wyoming resident. Commodore Bar, Inc. and Silver Dollar Bar of Lusk, LLC were Wyoming entities during the time frame alleged herein. Rick L. Bowen and Larry R. Halligan are Wyoming residents.

10.     The acts giving rise to this action occurred and were committed in Laramie, Goshen, Niobrara, and Platte County, Wyoming. Venue is proper in

the United States District Court for the District of Wyoming pursuant to 28 U.S.C. §§ 1331, 1332, and 1343 and 18 USC § 1964.

## GENERAL ALLEGATIONS

11.    The Foursome, Inc. dba Orrison Distributing, Ltd. ("Orrison") has supplied both Miller and Anheuser Busch beers to J&B Package Liquor, in Torrington, Wyoming, continuously since at least January 1, 2002, to present.

12.    During this time period, Kirchhefer, a full time employee of Orrison, traveled to J&B Package Liquor the day before beer deliveries to inventory existing beer on the premises and decide what beer should be transported from Orrison facilities in Cheyenne, Wyoming to J&B Package Liquor the next day.   Kirchhefer's orders were transmitted via a handheld computer to Orrison to allow the delivery drivers to load the proper amount of products on a delivery truck for delivery the next morning.   The handheld computer utilized interstate phone lines for transmittal of the electronic information concerning the beer to be distributed to J&B Package Liquor.

13.    The beer distributed by Orrison in Wyoming is produced and manufactured at the Anheuser Bush production plant located between Wellington and Fort Collins, Colorado.   Miller products are manufactured outside of Wyoming and transferred into Wyoming for sale.   Once purchased by Orrison, the Anheuser Bush products are transported in interstate commerce

4

from the state of Colorado to the state of Wyoming, where it is stored at the Orrison facilities located in Cheyenne, Wyoming.  Once purchased by Orrison, the Miller products are transported in interstate commerce from outside of Wyoming to the state of Wyoming, where it is stored at the Orrison facilities located in Cheyenne, Wyoming.  Orrison's orders for beer are processed via interstate phone lines and utilize interstate wire transfers for payment of the purchase price for the beer transported from Colorado or elsewhere to Wyoming.

14.    Orrison's beer sales in Wyoming affected interstate commerce. Commodore Bar, Inc. and Rick L. Bowen's beer sales in Wyoming affected interstate commerce.  The Silver Dollar Bar, LLC and Larry Halligan's beer sales in Wyoming affected interstate commerce.  Kirchhefer's illegal beer sales in Wyoming affected interstate commerce.

15.    The day before each delivery of beer by Orrison, Kirchhefer would travel to J&B Package Liquor to conduct a "presale." A "presale" involved Kirchhefer inventorying what beer was on hand at J&B Package Liquor to determine what beer was to be delivered from Cheyenne to J&B Package Liquor the following day.  The quantities and types of beer to be delivered to J&B Package Liquor were communicated by Kirchhefer to Orrison via a handheld computer.    The presale information from the handheld computer was

downloaded and transferred by Kirchhefer via interstate phone lines from Torrington, Wyoming to Orrison Distributing in Cheyenne, Wyoming. These orders for additional beer via the handheld computer and interstate phone lines affected interstate commerce.

16.    On the day of delivery, the Orrison truck would leave Cheyenne and travel to J&B Package Liquor in Torrington, Wyoming.

17.    The drivers of the delivery truck would remove the beer that was to be distributed to J&B Package Liquor and stack this beer in the alley behind J&B Liquor for transport into the premises of J&B Liquor.

18.    Shortly after the arrival of the Orrison truck from Cheyenne, Wyoming, Kirchhefer would arrive and instruct the drivers that they could go on their delivery route and Kirchhefer would actually transport the beer into the J&B Package Liquor premises.

19.    After the Orrison truck had left the area of J&B Package liquor, Kirchhefer would then transport only a portion of the beer ordered for J&B Package liquor into the J&B Package Liquor store and transferred a portion of the beer ordered on behalf of, and paid for by, J&B Liquor into an Orrison vehicle supplied to Kirchhefer by Orrison.

20.    J&B Package Liquor was billed and paid for the entire amount of beer transported by Orrison to the area of J&B Package Liquor on the day of

6

delivery, including the beer loaded by Kirchhefer into his Orrison van which was transported elsewhere.

21. Upon assuming managerial duties of J&B Package Liquor in early 2007, Eric Alden noticed discrepancies between beer sales and beer purchases and began an investigation to determine why the income from beer sales was lower than expected and frequently was less than J&B Liquor's expenses for beer. Ultimately, Alden determined that the only explanation involved theft of beer and based on Alden's observations, the likely suspect was Kirchhefer.

22. On August 30, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

23. On August 30, 2007, Alden inventoried the amount of Orrison products present in the J&B Package Liquor upon closing of the store.

24. On August 31, 2007, Orrison employees and Kirchhefer delivered beer to J&B Package Liquor.

25. On August 31, 2007, Kirchhefer provided an invoice to J&B Package Liquor which allegedly showed the amount of beer delivered to the store.

26.    The invoice delivered by Kirchhefer was false and fraudulent because the invoice included both beer actually delivered to J&B Package Liquor and the beer stolen by Kirchhefer that was not delivered to J&B Package Liquor.

27.    After the beer delivery on August 31, 20007, Alden once again inventoried the beer at J&B Package Liquor.

28.    The inventory disclosed that approximately $646.60 worth of malt beverage products (40 cases) which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

29.    On September 3, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale."  Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

30.    On September 3, 2007, Alden inventoried the amount of Orrison products present in the J&B Package Liquor upon closing of the store.

31.    On September 4, 2007, Orrison employees and Kirchhefer delivered beer to the J&B Package Liquor.

32.    On September 4, 2007, Kirchhefer provided an invoice to J&B Package Liquor which allegedly showed the amount of beer delivered to J&B Package Liquor.

33.   The invoice delivered by Kirchhefer was false and fraudulent because the invoice included both beer actually delivered to J&B Package Liquor and the beer stolen by Kirchhefer that was not delivered to J&B Package Liquor.

34.   After the beer delivery on September 4, 2007, Alden once again inventoried the beer at J&B Package Liquor.

35.   The inventory disclosed that approximately $386.70 worth of malt beverage products (24 cases) which were alleged to have been delivered to J&B Package Liquor where not in fact delivered to J&B Package Liquor.

36.   On September 6, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

37.   On September 6, 2007, Alden inventoried the amount of Orrison products present in J&B Package Liquor upon closing of the store.

38.   On September 7, 2007, Orrison employees and Kirchhefer delivered beer to J&B Package Liquor.

39.   On September 7, 2011, Kirchhefer provided an invoice to J&B Package Liquor.

40.     The invoice delivered by Kirchhefer was false and fraudulent because the invoice included both the beer actually delivered to J&B Package Liquor and the beer stolen by Kirchhefer that was not delivered to J&B Package Liquor.

41.     After the beer delivery on September 7, 2007, Alden once again inventoried the beer at J&B Package Liquor.

42.     The inventory disclosed that approximately $304.20 worth of malt beverage products (18 cases) which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

43.     On September 10, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

44.     On September 10, 2007, Alden inventoried the amount of Orrison products present in the J&B Package Liquor upon closing of the store.

45.     On September 11, 2007, Orrison employees and Kirchhefer delivered beer to J&B Package Liquor.

46.     On September 11, 2007, Kirchhefer provided an invoice to J&B Package Liquor which allegedly showed the amount of beer delivered to the J&B Package Liquor.

10

47.   The invoice delivered by Kirchhefer was false and fraudulent because the invoice included both beer actually delivered to and the beer stolen by Kirchhefer that was not delivered to J&B Package Liquor.

48.   After the beer delivery on September 11, 2007, Alden once again inventoried the beer at J&B Package Liquor.

49.   The inventory disclosed that approximately $287.30 worth of malt beverage products (17 cases) which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

50.   On September 17, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

51.   On September 17, 2007, Alden inventoried the amount of Orrison products present in the J&B Package Liquor upon closing of the store.

52.   On September 18, 2007, Orrison employees and Kirchhefer delivered beer to J&B Package Liquor.

53.   On September 18, 2007, Kirchhefer provided an invoice to J&B Package Liquor which allegedly showed the amount of beer delivered to J&B Package Liquor.

54.     After the beer delivery on September 18, 2007, Alden once again inventoried the beer at J&B Package Liquor.

55.     The inventory disclosed that there was no inventory missing.

56.     On September 20, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

57.     On September 20, 2007, Alden inventoried the amount of Orrison products present in the J&B Package Liquor upon closing of the store.

58.     On September 21, 2007, Orrison employees and Kirchhefer delivered beer to J&B Package Liquor.

59.     On September 21, 2007, Kirchhefer provided an invoice to J&B Package Liquor which allegedly showed the amount of beer delivered to J&B Package Liquor.

60.     The invoice delivered by Kirchhefer was false and fraudulent because the invoice included both beer actually delivered to J&B Package Liquor and the beer stolen by Kirchhefer that was not delivered to J&B Package Liquor.

61.     After the beer delivery on September 21, 2007, Alden once again inventoried the beer at J&B Package Liquor.

12

62.    The inventory disclosed that approximately $518.75 worth of malt beverage products (32 cases) which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

63.    On September 24, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

64.    On September 24, 2007, Alden inventoried the amount of Orrison products present in the J&B Package Liquor upon closing of the store.

65.    On September 25, 2007, Orrison employees and Kirchhefer delivered beer to J&B Package Liquor.

66.    On September 25, 2007, Kirchhefer provided an invoice to J&B Package Liquor which allegedly showed the amount of beer delivered to J&B Package Liquor.

67.    The invoice delivered by Kirchhefer was and fraudulent because the invoice included both the beer actually delivered to J&B Package Liquor and the beer stolen by Kirchhefer that was not delivered to J&B Package Liquor.

68.    After the beer delivery on September 25, 2007, Alden once again inventoried the beer at J&B Package Liquor.

13

69.     The inventory disclosed that approximately $574.60 worth of malt beverage products (34 cases) which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

70.     Eric Alden was out of town between approximately September 27, 2007 and October 2, 2007, and no inventories were done during this time period.

71.     On October 4, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

72.     On October 4, 2007, Alden inventoried the amount of Orrison products present in J&B Package Liquor upon closing of the store.

73.     On October 5, 2007, Orrison employees and Kirchhefer delivered beer to J&B Package Liquor.

74.     On October 5, 2007, Kirchhefer provided an invoice to the store which allegedly showed the amount of beer delivered to J&B Package Liquor.

75.     The invoice delivered by Kirchhefer was false and fraudulent because the invoice included both the beer actually delivered to J&B Package Liquor and the beer stolen by Kirchhefer that was not delivered to J&B Package Liquor.

14

76. After the beer delivery on October 5, 2007, Alden once again inventoried the beer at J&B Package Liquor.

77. The inventory disclosed that approximately $493.90 worth of malt beverage products (31 cases) which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

78. On October 8, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

79. On October 8, 2007, Alden inventoried the amount of Orrison products present in the J&B Package Liquor upon closing of the store.

80. On October 9, 2007, Orrison employees and Kirchhefer delivered beer to J&B Package Liquor.

81. On October 9, 2007, Kirchhefer provided an invoice to the store which allegedly showed the amount of beer delivered to J&B Package Liquor.

82. After the beer delivery on October 9, 2007, Alden once again inventoried the beer at J&B Package Liquor.

83. The inventory disclosed that there was no inventory missing.

84. Based upon information and belief, Kirchhefer was on vacation during the time period of the October 9, 2007 and the October 12, 2007 deliveries by Orrison and no beer was missing.

85. On October 15, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

86. On October 15, 2007, Alden inventoried the amount of Orrison products present in the J&B Package Liquor upon closing of the store.

87. On October 16, 2007, Orrison employees and Kirchhefer delivered beer to J&B Package Liquor.

88. On October 16, 2007, Kirchhefer provided an invoice to J&B Package Liquor which allegedly showed the amount of beer delivered to J&B Package Liquor.

89. The invoice delivered by Kirchhefer was false and fraudulent because the invoice included both the beer actually delivered to J&B Package Liquor and the beer stolen by Kirchhefer that was not delivered to J&B Package Liquor.

90. After the beer delivery on October 16, 2007, Alden once again inventoried the beer at J&B Package Liquor.

91.     The inventory disclosed that approximately $721.10 worth of malt beverage products (44 cases) which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

92.     On October 18, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

93.     On October 18, 2007, Alden inventoried the amount of Orrison products present in J&B Package Liquor upon closing of the store.

94.     On October 19, 2007, Orrison employees and Kirchhefer delivered beer to J&B Package Liquor.

95.     On October 19, 2007, Kirchhefer provided an invoice to J&B Package Liquor which allegedly showed the amount of beer delivered to J&B Package Liquor.

96.     The invoice delivered by Kirchhefer was false and fraudulent because the invoice included both the beer actually delivered to J&B Package Liquor and the beer stolen by Kirchhefer that was not delivered to J&B Package Liquor.

97.     After the beer delivery on October 19, 2007, Alden once again inventoried the beer at J&B Package Liquor.

17

98.     The inventory disclosed that approximately $969.00 worth of malt beverage products (60 cases) which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

99.     On October 22, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale."  Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

100.   On October 22, 2007, Alden inventoried the amount of Orrison products present in the J&B Package Liquor upon closing of the store.

101.   On October 23, 2007, Orrison employees and Kirchhefer delivered beer to J&B Package Liquor.

102.   On October 23, 2007, Kirchhefer provided an invoice to J&B Package Liquor which allegedly showed the amount of beer delivered to J&B Package Liquor.

103.   The invoice delivered by Kirchhefer was false and fraudulent because the invoice included both the beer actually delivered to J&B Package Liquor and the beer stolen by Kirchhefer that was not delivered to J&B Package Liquor.

104.   After the beer delivery on October 23, 2007, Alden once again inventoried the beer at J&B Package Liquor.

18

105.   The inventory disclosed that approximately $816.50 worth of malt beverage products (50 cases) which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

106.  On October 25, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale."   Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

107.  On October 25, 2007, Alden inventoried the amount of Orrison products present in the J&B Package Liquor upon closing of the store.

108.  On October 26, 2007, Orrison employees and Kirchhefer delivered beer to J&B Package Liquor.

109.  On October 26, 2007, Kirchhefer provided an invoice to J&B Package Liquor which allegedly showed the amount of beer delivered to J&B Package Liquor.

110.  The invoice delivered by Kirchhefer was false and fraudulent because the invoice included both the beer actually delivered to J&B Package Liquor and the beer stolen by Kirchhefer that was not delivered to J&B Package Liquor.

111.  After the beer delivery on October 26, 2007, Alden once again inventoried the beer at J&B Package Liquor.

19

112. The inventory disclosed that approximately $783.10 worth of malt beverage products (49 cases) which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

113. In late October, 2007, Chugwater installed a video surveillance system at J&B Package Liquor. The video of the delivery on October 30, 2007, shows Kirchhefer taking the 91 cases of beer that were disclosed as being missing by the inventories conducted before the delivery by Orrison and after the delivery by Orrison. The video shows that after Kirchhefer has sent the truck to its next delivery, Kirchhefer moved only a portion of the beer stacked in the alley into J&B Package Liquor. The beer that he stole was loaded into the Orrison van that Kirchhefer drove to the area of J&B Package Liquor. All deliveries since October 30, 2007, have been videoed and disclose that Kirchhefer is responsible for each shortage of beer since that date.

114. On October 29, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

115. On October 29, 2007, Alden inventoried the amount of Orrison products present in the J&B Package Liquor upon closing of the store.

116. On October 30, 2007, Orrison employees and Kirchhefer delivered beer to J&B Package Liquor.

117. On October 30, 2007, Kirchhefer provided an invoice to J&B Package Liquor which allegedly showed the amount of beer delivered to J&B Package Liquor.

118. The invoice delivered by Kirchhefer was false and fraudulent because the invoice included both the beer actually delivered to J&B Package Liquor and the beer stolen by Kirchhefer that was not delivered to J&B Package Liquor.

119. After the beer delivery on October 30, 2007, Alden once again inventoried the beer at J&B Package Liquor.

120. The inventory disclosed that approximately $1,506.40 worth of malt beverage products (91 cases) which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

121. On November 1, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

122. On November 2, 2007, video surveillance of J&B Package Liquor disclosed that approximately $845.00 worth of malt beverage products (50

cases) which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor and were stolen by Kirchhefer.

123. On November 5, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

124. On November 6, 2007, video surveillance of J&B Package liquor disclosed that approximately $490.10 worth of malt beverage products (29 cases) were not in fact delivered by J&B Package Liquor and were stolen by Kirchhefer.

125. On November 8, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

126. On November 9, 2007, Kirchhefer observed an investigator conducting surveillance of Kirchhefer during a delivery to J&B Package Liquor. Upon information and belief, Kirchhefer quit stealing beer from J&B Package Liquor between approximately November 9, 2007 and December 21, 2007, out of fear of being surveilled and the discovery of his thefts.

127. On December 20, 2007, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

128. On December 21, 2007, video surveillance of J&B Package Liquor disclosed that approximately 8 cases of malt beverage products which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

129. On January 17, 2008, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

130. On January 18, 2008, video surveillance of J&B Package Liquor disclosed that approximately 12 cases of malt beverage products which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

131. On February 21, 2008, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

132. On February 22, 2008, video surveillance of J&B Package Liquor disclosed that approximately 30 cases of malt beverage products which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

133. On March 24, 2008, Kirchhefer travelled to J&B Package Liquor and performed a "presale." Upon completion of the "presale," Kirchhefer transmitted, via his handheld computer and interstate phone lines, a beer delivery request to Orrison in Cheyenne, Wyoming.

134. On March 25, 2008, video surveillance of J&B Package Liquor disclosed that approximately 21 cases of malt beverage products which were alleged to have been delivered to J&B Package Liquor were not in fact delivered to J&B Package Liquor.

135. Between August 30, and November 6, 2007, Kirchhefer stole at least $9,343.25 worth of beer excluding the approximately two weeks when Eric Alden was on vacation and unable to inventory pre and post Orrison delivery. Accounting records maintained by Chugwater show that total beer purchases for this same period were $86,147.02 and that their sales during that same period were $91,716.75. Adjusting the purchases during these periods by $8,696.65 to reflect Kirchhefer's confirmed thefts for those months, shows a ratio of purchases to sales as being 84.5% of sales.

136. Applying the 84.5% ratio of cost to beer sales for calendar years 2002, 2003, 2004, 2005, 2006, and 2007 shows theft by Kirchhefer from J&B Package Liquors in the amount of $44,815 in Orrison products in calendar year 2002, in the amount of $53,832 in Orrison products in calendar year 2003, in the amount of $53,903 in Orrison products in calendar year 2004, $51,665 in Orrison products in calendar year 2005, $66,262 in Orrison products in calendar year 2006 and $66,849 in Orrison products in calendar year 2007.

137. Upon information and belief, the Plaintiffs allege that Kirchhefer, while in the full time employment of Orrison has stolen approximately $337,326 in Orrison products that were purportedly delivered to J&B Package Liquor in Torrington, Wyoming.

138. After stealing beer from Orrison deliveries ordered by and on behalf of J&B Package Liquor, Kirchhefer would store the stolen beer either in his Orrison van, his garage, or a storage shed located between Torrington and Lingle, Wyoming.

139. Kirchhefer would thereafter sell the beer stolen from J&B Package Liquor to either the Silver Dollar Bar located in Lusk, Wyoming, or the Commodore Bar located in Wheatland, Wyoming.

140.  With regard to the Silver Dollar Bar, Kirchhefer would frequently call the owner of the Silver Dollar Bar, Larry Halligan, and ask Halligan how much beer he wanted to purchase directly from Kirchhefer.  Kirchhefer would then travel to Lusk, Wyoming, meet with Larry Halligan at the Silver Dollar Bar and sell Larry Halligan cases of the beer stolen from J&B Package Liquor at the substantially discounted price of $12 per case.  During this time period, Orrison's wholesale price to purchase package liquor stores was approximately $18.00 per case.  The wholesale prices fluctuated based on special sale deals, time of year, and other factors determined by Orrison.

141.  Larry Halligan and the Silver Dollar Bar of Lusk, LLC, would pay Kirchhefer in cash for the stolen beer.

142.  Because these sales to Larry Halligan and the Silver Dollar Bar of Lusk, LLC occurred the day before the delivery by Orrison, Larry Halligan, who ordered directly from Orrison rather than engaging in a "presale" as described with regard to J&B Package Liquor, could reduce his beer purchases from Orrison.

143.  Before traveling to Lusk, Wyoming, Kirchhefer would frequently call Larry Halligan to inquire how many cases of stolen beer Larry wished to purchase.  Kirchhefer made these phone calls using either his landline or his cell phone, both of which affect interstate commerce.

144. With regard to the Commodore Bar in Wheatland, Wyoming, Kirchhefer would travel to Wheatland, Wyoming with the beer stolen from J&B Package Liquor and sell the beer to Rick Bowen, the owner of the Commodore Bar, Inc., in Wheatland, Wyoming, at the substantially reduced price of $12 per case.

145. Kirchhefer would make these trips to sell Rick Bowen the beer stolen from J&B Package Liquor when he was conducting the "presale" at the Commodore Bar, the day before the Orrison distributions to the Commodore Bar.

146. Because Kirchhefer knew how much stolen beer he had sold to Rick Bowen, Kirchhefer would reduce the amount of the beer that needed to be ordered and purchased from Orrison.

147. Kirchhefer, after inventorying the beer at the Commodore Bar, Inc., would enter the amount of the next day's order on a handheld computer which was subsequently transmitted via interstate phone lines connection to Orrison Distributing in Cheyenne, Wyoming. These transactions affected interstate commerce.

148. Rick Bowen and the Commodore Bar, Inc. would pay Kirchhefer in cash for the beer stolen from J&B Package Liquor in Torrington, Wyoming.

149.  Kirchhefer, Commodore Bar, Inc., Rick Bowen, Silver Dollar Bar of Lusk, LLC, and Larry Halligan's actions in this regard constitute willful and wanton misconduct in that Kirchhefer, Commodore Bar, Inc., Rick Bowen, Silver Dollar Bar of Lusk, LLC, and Larry Halligan acted and failed to act in reckless disregard of the consequences and under such circumstances and conditions that a reasonable person would have known and had reason to know that their conduct would, with a high degree of probability, result in harm to the Plaintiffs.

150.  Pursuant to Wyoming Statutes, retail distributors of malt beverages must purchase malt beverage products from a franchisee such as Orrison and must pay for the malt beverages on the day of delivery.  Private parties such as Kirchhefer cannot legally sell beer to retail beer distributors.

### FIRST CAUSE OF ACTION
### CIVIL RICO AGAINST KIRCHHEFER, THE COMMODORE BAR, INC., AND RICK BOWEN, IN VIOLATION OF 18 USC § 1962(a)

Paragraphs numbered 1-150 are hereby realleged and incorporated herein by this reference.

151.  The Commodore Bar, Inc. and Rick Bowen knew that all beer in the state of Wyoming must, by statute, be purchased from a licensed beer distributor.  Commodore Bar, Inc. and Rick Bowen purchased all of their Budweiser and Miller products through Orrison.  Deliveries of beer from

Orrison had to be paid for at the time of delivery and Orrison provided an invoice for the beer deliveries.

152. Commodore Bar, Inc. and Rick Bowen knew that individuals such as Kirchhefer could not sell beer to retail establishments pursuant to Wyoming Statutes.

153. Between 2002 to April, 2008, Commodore Bar, Inc. and Rick Bowen purchased beer from Kirchhefer on a weekly basis for the substantially reduced price of $12 per case.

154. Kirchhefer never supplied Commodore Bar, Inc. or Rick Bowen with an invoice for these beer purchases.

155. Rick Bowen always paid Kirchhefer in cash for these beer purchases.

156. Rick Bowen would thereafter resell the stolen beer he purchased from Kirchhefer at the Commodore Bar in Wheatland, Wyoming.

157. The monies and income generated from the pattern of racketeering activity in violation of 18 U.S.C. §1343, as more specifically alleged in Paragraphs 11 to 150 of this Complaint, i.e., wire fraud associated with the sale of the beer stolen by Kirchhefer and subsequently purchased and resold by Commodore Bar, Inc. and Rick Bowen, were used and invested, directly and indirectly, in the operation of the enterprise, the Commodore Bar and the

association of Rick Bowen, Kirchhefer, and the Commodore Bar, which was engaged in and affected interstate commerce, in violation of 18 U.S.C. § 1962(a).

158. The Plaintiffs Robert L. Kroenlein Trust by and through Deborah Alden, Successor Trustee, and Chugwater Brewing Company, Inc., A Wyoming Corporation have been injured in their business and property by the thefts perpetrated by Kirchhefer and the subsequent purchase and resale of stolen goods by the Commodore Bar, Inc. and Rick Bowen. The Plaintiffs have suffered damages because of the racketeering activity of the Defendants Kirchhefer, the Commodore Bar, Inc. and Rick Bowen in the amount at least $337,326.00 and in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## CIVIL RICO AGAINST KIRCHHEFER, THE SILVER DOLLAR BAR OF LUSK, LLC, AND LARRY HALLIGAN, IN VIOLATION OF 18 USC § 1962(a)

Paragraphs numbered 1-158 are hereby realleged and incorporated herein by this reference.

159. The Silver Dollar Bar of Lusk, LLC and Larry Halligan knew that all beer in the state of Wyoming must, by statute, be purchased from a licensed beer distributor. Silver Dollar Bar of Lusk, LLC and Larry Halligan purchased all of their Budweiser and Miller products through Orrison. Deliveries of beer

30

from Orrison had to be paid for at the time of delivery and Orrison provided an invoice for the beer deliveries.

160. Silver Dollar Bar of Lusk, LLC and Larry Halligan knew that individuals such as Kirchhefer could not sell beer to retail establishments pursuant to Wyoming Statutes.

161. Silver Dollar Bar of Lusk, LLC and Larry Halligan purchased beer from Kirchhefer on a weekly basis for the substantially reduced price of $12 per case.

162. Kirchhefer never supplied Silver Dollar Bar of Lusk, LLC or Larry Halligan with an invoice for these beer purchases.

163. Larry Halligan always paid Kirchhefer in cash for these beer purchases.

164. Larry Halligan would thereafter resell the stolen beer he purchased from Kirchhefer at the Silver Dollar Bar in Lusk, Wyoming.

165. The monies and income generated from the pattern of racketeering activity in violation of 18 U.S.C. §1343, as more specifically alleged in Paragraph 11 to 150 of this Complaint, i.e., wire fraud associated with the sale of the beer stolen by Kirchhefer and subsequently purchased by Silver Dollar Bar of Lusk, LLC and Larry Halligan were used and invested, directly and indirectly, in the operation of the enterprise, the Silver Dollar Bar, which was

engaged in and affected interstate commerce, in violation of 18 U.S.C. § 1962(a).

166. The Plaintiffs Robert L. Kroenlein Trust by and through Deborah Alden, Successor Trustee, and Chugwater Brewing Company, Inc., A Wyoming Corporation have been injured in their business and property by the thefts perpetrated by Kirchhefer and the subsequent purchase and resale of stolen goods by Silver Dollar Bar of Lusk, LLC and Larry Halligan. The Plaintiffs have suffered damages because of the racketeering activity of the Defendants Kirchhefer, Silver Dollar Bar of Lusk, LLC, and Larry Halligan in the amount at least $337,326.00 and in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## CIVIL RICO AGAINST KIRCHHEFER, RICK BOWEN, AND THE COMMODORE BAR, INC. PURSUANT TO 18 USC § 1962(c)

Paragraphs numbered 1-165 are hereby realleged and incorporated herein by this reference.

167. The Commodore Bar, Inc., Kirchhefer and Rick Bowen were associated with an enterprise engaged in, or the activities of which affected interstate commerce, and conducted and participated, directly and indirectly, in the conduct of the enterprises affairs through a pattern of racketeering activity in violation of 18 U.S.C. §1343 and as more specifically alleged in paragraph 11-166 herein, in violation of 18 U.S.C. § 1962(c)..

168. The Plaintiffs Robert L. Kroenlein Trust by and through Deborah Alden, Successor Trustee, and Chugwater Brewing Company, Inc., A Wyoming Corporation have been injured in their business and property by the thefts perpetrated by Kirchhefer and the subsequent purchase and resale of stolen goods by The Commodore Bar, Inc. and Rick Bowen. The Plaintiffs have suffered damages because of the racketeering activity of the Defendants Kirchhefer, The Commodore Bar, Inc. and Rick Bowen, in the amount at least $337,326.00 and in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
## CIVIL RICO AGAINST KIRCHHEFER, LARRY HALLIGAN, AND THE SILVER DOLLAR BAR OF LUSK, LLC PURSUANT TO 18 USC § 1962(c)

Paragraphs numbered 1-167 are hereby realleged and incorporated herein by this reference.

169. Larry Halligan, Kirchhefer, and the Silver Dollar Bar of Lusk, LLC, were associated with an enterprise engaged in, or the activities of which affected interstate commerce, and conducted and participated, directly and indirectly, in the conduct of the enterprises affairs through a pattern of racketeering activity in violation of 18 U.S.C. §1343 and as were specifically alleged in paragraphs 11-166 herein and in violation of 18 U.S.C. § 1962(c).

170. The Plaintiffs Robert L. Kroenlein Trust by and through Deborah Alden, Successor Trustee, and Chugwater Brewing Company, Inc., a Wyoming

Corporation have been injured in their business and property by the thefts perpetrated by Kirchhefer and the subsequent purchase and resale of stolen goods by the Silver Dollar Bar of Lusk, LLC and Larry Halligan. The Plaintiffs have suffered damages because of the racketeering activity of the Defendants Kirchhefer, the Silver Dollar Bar of Lusk, LLC and Larry Halligan, in the amount at least $337,326.00 and in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## CONSPIRACY TO VIOLATE CIVIL RICO STATUTES 18 USC § 1962(a) and (c) IN VIOLATION OF 18 USC § 1962(d)

Paragraphs numbered 1-169 are hereby realleged and incorporated herein by this reference.

171. Kirchhefer and Rick Bowen conspired to violate the provisions of 18 USC § 1962(a) and (c) as alleged in paragraphs 11 to 169 of this Complaint, in violation of 18 U.S.C. § 1962(d).

172. Kirchhefer and Rick Bowen, both individually and collectively, undertook numerous overt and predicate acts in furtherance of this conspiracy and racketeering activity including, but not limited to, the theft of beer by Kirchhefer from Orrison and J& B Package Liquor, the resale of stolen beer at the sharply reduced price of $12 per case by Kirchhefer to Rick Bowen in Wheatland, Wyoming, the subsequent resale of the stolen beer by Rick Bowen and Commodore Bar, Inc., and the reinvestment of profit into Commodore Bar,

34

Inc. and as income to Rick Bowen. These overt acts are alleged herein in paragraphs 11 to 150. The Plaintiffs Robert L. Kroenlein Trust by and through Deborah Alden, Successor Trustee, and Chugwater Brewing Company, Inc., a Wyoming Corporation have been injured in their business and property by the thefts perpetrated by Kirchhefer and the subsequent purchase and resale of stolen goods by the Commodore Bar and Rick Bowen. The Plaintiffs have suffered damages because of the racketeering activity of the Defendants Kirchhefer, the Commodore Bar and Rick Bowen, in the amount of at least $337,326.00 and in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
## CONSPIRACY TO VIOLATE CIVIL RICO STATUTES 18 USC § 1962(a) and (c) IN VIOLATION OF 18 USC § 1962(d)

Paragraphs numbered 1-172 are hereby realleged and incorporated herein by this reference.

173. Kirchhefer and Larry Halligan conspired to violate the provisions of 18 USC § 1962(a) and (c) as alleged in paragraphs 11 to 172 of this Complaint in violation of 18 U.S.C. § 1962(d).

174. Kirchhefer and Larry Halligan, both individually and collectively, undertook numerous overt acts in furtherance of this conspiracy including, but not limited to, the theft of beer by Kirchhefer from Orrison and J& B Package Liquor, the resale of stolen beer at the sharply reduced price of $12 per case by

Kirchhefer to Larry Halligan in Lusk, Wyoming, the subsequent resale of the stolen beer by Silver Dollar Bar of Lusk, LLC and Larry Halligan, and the reinvestment of profit into Silver Dollar Bar of Lusk, LLC and as income to Larry Halligan. These overt acts are alleged herein in paragraphs 11 to 172.

175. The Plaintiffs Robert L. Kroenlein Trust by and through Deborah Alden, Successor Trustee, and Chugwater Brewing Company, Inc., a Wyoming Corporation have been injured in their business and property by the thefts perpetrated by Kirchhefer and the subsequent purchase and resale of stolen goods by the Silver Dollar Bar of Lusk, LLC and Larry Halligan. The Plaintiffs have suffered damages because of the racketeering activity of the Defendants Kirchhefer, the Silver Dollar Bar of Lusk, LLC and Larry Halligan, in the amount at least $337,326.00 and in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
## INTENTIONAL TORT OF CONVERSION

Paragraphs numbered 1-175 are hereby realleged and incorporated herein by this reference.

176. Kirchhefer, in the course and scope of his employment with Orrison, has stolen and converted property belonging to the Plaintiffs and J&B Package Liquor.

177. Kirchhefer had no right, permission, or authority to steal property belonging to the Plaintiffs and J&B Package Liquor.

178. Defendants Kirchhefer, Commodore Bar, Inc., Rick Bowen, Silver Dollar Bar of Lusk, LLC, and Larry Halligan owed a duty to other retail distributors of malt beverages to act lawfully and to not purchase stolen beer at sharply reduced prices.

179. Defendants Kirchhefer, Commodore Bar, Inc., Rick Bowen, Silver Dollar Bar of Lusk, LLC, and Larry Halligan's actions have converted property belonging to Plaintiffs and have caused damage to the Plaintiffs and J&B Package Liquor in the total amount of at least $337,326.00 and in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
## FRAUD

Paragraphs numbered 1-179 are hereby realleged and incorporated herein by reference.

180. Wyoming law requires all malt beverages to be paid for at the time of delivery.

181. Wyoming law requires all malt beverages to be purchased from a licensed malt beverage distributor.

182. Following each delivery of Orrison products by Orrison and Kirchhefer, Kirchhefer would supply J&B Package Liquor employees with an invoice which allegedly disclosed the amount of malt beverage products that had actually been distributed to J&B Package Liquor.

37

183. On the dates that Kirchhefer had stolen beer from J&B Package Liquor, Kirchhefer knowingly made false representations of material facts to the Plaintiffs.

184. The false representations were made by Kirchhefer.

185. The Plaintiffs reasonably relied on the false representations made by Kirchhefer at the time of the beer deliveries and acted upon said false representations in issuing full payment for the beer that had allegedly been distributed.

186. The Plaintiffs have been damaged as a result of their reliance on the false representations of Kirchhefer in the amount of at least $337,326.00 and in an amount to be proven at trial.

WHEREFORE the Plaintiffs pray as follows:

1. The Court enter judgment in favor of the Plaintiffs in this matter.

2. The Court schedule a jury trial in this matter.

3. The Court award the Plaintiffs treble damages as alleged herein and as determined at trial pursuant to 18 U.S.C. § 1964(c).

4. The Court award the Plaintiffs punitive damages based on the Defendants' willful and wanton misconduct.

5. The Court award the Plaintiffs their reasonable costs of bringing this suit, including reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c).

6.    That the Court enter appropriate injunctive relief pursuant to 18 USC § 1964(a) ordering Rick Bowen and Larry Hallinan to divest themselves of their interest in the Commodore Bar, Inc. and the Silver Dollar Bar of Lusk, LLC and prohibiting Bowen and Hallinan from engaging in the same type of endeavor as the enterprise engaged in in the future.

7.    The Court award the Plaintiffs any and all additional relief to which they are entitled to.

DATED this ___ day of August, 2011.

> Robert L. Kroenlein Trust by and through
> Deborah Alden, Successor Trustee, and
> Chugwater Brewing Company, Inc.,
>     Plaintiffs

By: _____

> Patrick J. Crank, 5-2305
> Robert A. Nicholas, 5-2325
> NICHOLAS & CRANK, P.C.
> 2515 Warren Avenue, Suite 505
> P.O Box 1709
> Cheyenne, WY 82001
> (307) 634-2994
> Fax (307) 635-7155

> ATTORNEYS FOR PLAINTIFFS